```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

---

```
CARLOS GARCIA, A38505829,

                Petitioner,

        -v-                                    09-CV-416(MAT)
                                               ORDER
MARTIN HERON, Facilities Director,
MICHAEL PHILLIPS, DRO-Field Office
Director and ERIC HOLDER, Attorney
General of the United States,

                Respondents.
```

---

**INTRODUCTION**

Petitioner Carlos Garcia ("Garcia" or "Petitioner") has filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from continued detention in the custody of the Department of Homeland Security ("DHS") pending an order of removal. For the reasons that follow, Garcia's petition is denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of the Dominican Republic entered the United States as a lawful permanent resident in 1984. See Respondent's Exhibits ("Ex.") at 108. (Dkt. #6). Petitioner's first conviction occurred in 1997, when he was eighteen years old, for Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02). As a result, removal proceedings were initiated by the former Immigration and Naturalization Service ("INS"), which

charged Garcia as a removable alien for conviction of a firearms offense.[1] Ex. 131; See Immigration and Nationality Act ("INA") § 237(a)(2)(C).[2] His removal proceedings in 1998 resulted in a grant of cancellation of removal. Ex. 133; See INA § 240A (providing for cancellation of removal for certain permanent residents who have not been convicted of an aggravated felony). Garcia had four more criminal convictions between 2001 and 2002, which again triggered removal proceedings in immigration court. Ex. 35. Petitioner was encountered by DHS at Willard Drug Treatment Campus, where he was serving a sentence for a conviction for Criminal Possession of a Controlled Substance in the Fifth Degree.[3] A Notice to Appear dated March 31, 2003 charged Garcia with being subject to removal as an aggravated felon and a controlled substance violator. Ex. 107-109; See INA §§ 237(a)(2)(A)(iii); 237(a)(2)(B)(i).

On September 16, 2003, while his removal proceedings were pending, Garcia filed a Form N-600 (Application for Certificate of

---

[1] The Court notes that it lacks jurisdiction to review petitioner's final order of removal in itself. 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal . . . ."). Review of the instant petition will thus be limited to review of petitioner's custody pending final removal.

[2] The INA is the basic body of immigration law. It is codified at Title 8 of the U.S. Code.

[3] Petitioner's criminal convictions include: (1) Criminal Possession of a Weapon in the Fourth Degree (firearm); (2) Criminal Possession of a Controlled Substance in the Fifth Degree; (3) Criminal Possession of a Controlled Substance in the Fifth Degree with Intent to Sell; and (4) a Pennsylvania Disorderly Conduct conviction.

Citizenship). Ex. 83, 92, 102. Petitioner was subsequently ordered removed *in absentia* by an immigration judge in Buffalo, New York pending the adjudication of his N-600 Application. Ex. 105-106. On September 14, 2004, Garcia was returned to DHS custody. He then sought a bond redetermination, which was denied due to his status as an aggravated felon. Ex. 118-119. His N-600 Application and subsequent appeal were also denied.[4] Ex. 120-122, 125. On October 19, 2004, the immigration judge denied petitioner's motion to reopen his removal proceedings, and on October 21, 2004, DHS sent a presentation packet to the Consulate General of the Dominican Republic to request a travel document for petitioner's removal. Ex. 15, 128.

Garcia then filed a petition for writ of habeas corpus and a motion for a stay of removal in this Court. See Garcia v. Department of Homeland Security, No. 04-CV-949(MAT), Docket No. 1 (W.D.N.Y. Filed on 11/29/2004). Petitioner's motion for a stay of removal was granted, thereby preventing DHS from executing the immigration court's order of removal. See id., Docket No. 3. DHS then cancelled arrangements for Garcia's removal, which had been scheduled for December 8, 2004. In January of 2005, Garcia's custody had been reviewed and DHS determined that his custody would

---

[4] Petitioner's citizenship claim is at issue in a separate habeas petition before this Court. See Garcia v. Department of Homeland Security, No. 04-CV-949(MAT), Docket No. 1 (W.D.N.Y. Filed on 11/29/2004). The Second Circuit transferred the matter to this Court pursuant to 8 U.S.C. § 1252(b)(5)(B). See id., Docket No. 12.

be continued. Ex. 93-94. While in DHS custody, petitioner filed a second N-600 Application, which was again denied. Ex. 77-82.

On January 3, 2006, and January 3, 2007, petitioner was notified that his detention would continue. Ex. 46-47, 60-62. Following another review in January, 2008, Garcia was conditionally released from administrative custody subject to an Order of Supervision and was required to wear a Global Positioning System ("GPS") device. Ex. 26-30, 31-32. In April of 2008, however, petitioner removed the GPS and absconded from the supervised release program. He was then arrested on June 16, 2008, by DHS Fugitive Operations and was returned to the Buffalo Federal Detention Facility in Batavia, New York, where he is currently detained. Ex. 12, 24-25. Petitioner has requested habeas relief on the basis that his custody is unlawful. Petition ("Pet.") ¶ 31-38 (Dkt. #1).

**DISCUSSION**

**I. Law Governing Custody Pending Removal from the United States**

Matters pertaining to the detention of aliens implicate two separate provisions of the Immigration and Nationality Act. INA §§ 236 and 241, as codified at 8 U.S.C. § 1226 and 1231 are both relevant to the instant petition, and are discussed below.

**A. INA § 236: Custody Pending Removal Proceedings**

INA § 236 authorizes the arrest and detention of an alien for whom a warrant has been issued pending a decision on whether the

alien is to be removed from the United States. An alien has no right to be released during removal proceedings, though the statute provides the Attorney General with discretion to release non-criminal aliens on bond. See INA § 236(a); Matter of D-J-, 23 I&N Dec. 572, 575-576 (A.G. 2003). Section 236(c) specifically instructs the Attorney General to take certain criminal aliens into custody and precludes the release of such aliens pending the conclusion of removal proceedings.[5] INA § 236(c).

### B. INA § 241: Custody Pending Removal from the United States

By contrast, the authority to detain an alien after the issuance of a final order of removal is INA § 241(a), codified at 8 U.S.C. § 1231(a). Under this provision, the Attorney General is afforded a 90-day period to accomplish an alien's removal from the United States following the entry of a final order of removal. See INA § 241(a)(1)(A)-(B). Detention during the removal period is permitted. INA § 241(a)(2). For certain aliens, including those who have been convicted of criminal offenses, the Attorney General may continue to detain the alien beyond the 90-days: "An alien ordered removed who is . . . removable under section . . . 237(a)(2) . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be

---

[5] Aliens subject to this section include those charged as removable for having committed (1) multiple crimes of moral turpitude, (2) an aggravated felony, (3) a controlled substance offense, (4) certain firearm offenses, and (5) espionage-related crimes . INA § 236(c); 8 U.S.C. § 1226(c).

subject to the terms of supervision in paragraph (3)." INA § 241(a)(6). If an alien is released upon an order of supervision or other conditions of release, that release may be revoked and the alien returned to custody if the conditions of release are violated. 8 C.F.R. § 241.4(1). Upon such revocation, the alien is to be provided notification of the reasons for revocation and afforded an initial opportunity to respond, followed thereafter by custody review. Id.

    **C.   Relevant Case Law**

The authority to detain aliens under INA § 241 was modified by the United States Supreme Court in Zadvydas v. Davis, 533 U.S. 678, 699 (2001), which held that § 241 authorized immigration detention after entry of an administratively final order of removal, for a period "reasonably necessary" to accomplish the alien's removal from the United States. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. Zadvydas, 533 U.S. at 701. In order to prevent "indefinite" detention, the Zadvydas Court held that after the six-month period has elapsed, an alien may seek his release by demonstrating that his removal is not likely to occur in the reasonably foreseeable future. Id. at 699. The Second Circuit has held that administrative detention is "presumptively reasonable" for the first six months and, beyond that time, it is the petitioner's burden to demonstrate "there is no significant

likelihood of removal in the reasonably foreseeable future," which the Government must then rebut. Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003) (citing Zadvydas, 533 U.S. at 701).

No such limitation has been applied, however, to the detention of aliens under INA § 236(c), inasmuch as the risk of indefinite detention under § 236(c) will necessarily terminate with the completion of the administrative removal proceedings and the issuance of a final order of removal. See Demore v. Kim, 538 U.S. 510 (2003).[6] In Wang v. Ashcroft, 320 F.3d 130 (2d Cir. 2003), the Second Circuit held that whether an alien is subject to detention under INA § 241 (pre-removal, post-order) or § 236 (pending removal proceedings) is governed by § 241(a)(1):

> Pursuant to § 241(a)(1)(B)(ii), "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien [pending review]," then the removal period begins on "the date of the court's

---

[6] The Supreme Court distinguished between pre and post-removal order detention, emphasizing two "materially different" factors:

> First, the aliens [in Zadvydas] challenging their detention following final deportation orders were ones for whom removal was "no longer practically attainable," such that their detention did not serve its purported immigration purpose. In contrast, because the statutory provision at issue in this case [INA § 236] governs detention of deportable criminal aliens pending their removal proceedings, the detention necessarily serves the purpose of preventing the aliens from fleeing prior to or during such proceedings. Second, while the period of detention at issue in Zadvydas was "indefinite" and "potentially permanent," the record shows that [§ 236] detention not only has a definite termination point, but lasts, in the majority of cases, for less than the 90 days the Court considered presumptively valid in Zadvydas.

Demore, 538 U.S. at 511-12.

7

> final order." Accordingly, where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision.

Wang, 320 F.3d at 147. Thus, even after an alien's removal order is administratively final and the removal period has commenced, that period can be interrupted and will begin anew when the reviewing court issues its final order and lifts the stay. Where a court issues a stay of removal pending its review of an administratively final removal order, the alien is deemed to be detained under § 236. Id.

**II. Analysis of Petitioner's Claim**

Garcia's basis for habeas relief is that he has been in detention longer than the "presumptively reasonable" period under Zadvydas, and that there is no certainty as to when travel documents will be issued by the Dominican Consulate to effectuate Garcia's removal. Pet. ¶ 16-18. Although Garcia has been under a final order of removal and was in post-order detention under INA § 241 from September 2004 until the issuance of the court-ordered stay of removal in December 2004, his current detention with the stay in place is deemed pursuant to INA § 236(c). Wang, 320 F.3d at 146-147 ("Where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the Court renders its decision"). In the instant case, Garcia fails to provide a factual or legal basis to challenge

8

his continued detention in DHS custody whether he is considered held under either INA § 236 or § 241.

Petitioner was received into DHS custody from the custody of the New York State Department of Correctional Services on July 1, 2003, at which time his detention was pursuant to INA § 236. He was released from detention on bond pending completion of removal proceedings due to his claim that he had derived U.S. citizenship from his father's naturalization. Petitioner's removal proceedings concluded with an *in absentia* order of removal issued on November 14, 2003. When Garcia was returned to DHS custody on September 14, 2004, under a final order of removal, his detention was pursuant to INA § 241. Following the denial of petitioner's motion to reopen his immigration proceedings, DHS properly commenced efforts to obtain a travel document for Garcia from the Dominican Consulate and scheduled Garcia's removal for December 8, 2004. Before petitioner's removal could be completed, however, he filed a petition for writ of habeas corpus with a motion for stay of removal in this Court. See Garcia v. U.S. Department of Homeland Security, No. 04-CV-0949(MAT) (W.D.N.Y. Filed on 11/29/2004). The Court granted Garcia's request for a stay of removal on December 4, 2008, thereby preventing DHS from removing petitioner. The stay of removal remains in place at the present time.

Pursuant to INA § 241(a)(1)(B)(ii), the 90-day period of removal has been interrupted and will not recommence until the stay

of removal has been lifted. See 8 U.S.C. § 1231(a)(1)(B)(ii); 8 C.F.R. § 241.4(g)(1). As of December, 2004, DHS was prepared to remove Garcia to the Dominican Republic. Since that time, DHS has completed custody reviews in accordance with regulations issued following the Zadvydas decision.[7] See 8 C.F.R. § 241.13. Petitioner's detention will end when the stay of removal is lifted and judicial review of his removal proceedings are complete.[8] Garcia's continued detention in DHS custody is thus in accordance with both INA § 236(c) and the Supreme Court's decision in Demore v. Kim. Further, because the 90-day period for removal has not yet commenced (let alone expired), his petition for release under Zadvydas is premature. See Arthur v. Gonzales, 2008 WL 4934065 at *15 (W.D.N.Y. Nov. 14, 2008).

The Court notes that petitioner's removal has been stayed at his own request. "Such stays of removal do not, as a matter of law, automatically render the petitioner's detention into one of unreasonable length," Greenland v. INS/ICE Dep't of Homeland Sec. Dist. Director, 599 F.Supp.2d 365 (W.D.N.Y. 2009); see also Abimbola v. Ridge, 2006 WL 1408375 at **2 (2d Cir. 2006) (detention

---

[7] Following one such custody review, DHS determined to release Garcia from administrative custody subject to the conditions of an order of supervision. He was released on January 11, 2008, but absconded from the supervised release program in April and was subsequently apprehended and returned to detention in DHS custody on June 16, 2008.

[8] On September 28, 2009, this Court denied petitioner's claim for citizenship and dismissed his petition for habeas corpus filed on November 29, 2004. See Garcia v. Department of Homeland Security, No. 04-CV-949(MAT), Docket No. 46, 47.

well in excess of six months is reasonable where petitioner has sought and received multiple stays, because "a self-inflicted wound should not establish grounds for [a petitioner's claim of unreasonable detention pursuant to Zadvydas]")(citing Doherty v. Thornburgh, 943 F.2d 204, 205 (2d Cir. 1991)). A number of circuit courts agree that Zadvydas does not apply where an alien has obtained a judicial stay of removal. See Lawrence v. Gonzales, 446 F.3d 221, 227 (1st Cir. 2006) (alien's continued post-order detention past 90-day removal period was permissible where it "occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order"); Soberanes v. Comfort, 388 F.3d 1305, 1310-11 (10th Cir. 2004) (declining to apply Zadvydas to alien's two-and-a-half year detention where alien was detained pending judicial review of his removal order). In Soberanes, the Tenth Circuit concluded that detention pending judicial review is not indefinite or potentially permanent, but has a definite termination point, and therefore "is more akin to detention during the administrative review process, which was upheld in Demore v. Kim, 538 U.S. 510, 527-29 (2003)." 388 F.3d at 1310-11.

Certain district courts in this Circuit have similarly upheld periods of detention due to court-ordered stays:

> [P]etitioner's own actions-not the government's inability to deport him-have resulted in his continued detention during the past five years, during which time he has filed motions and/or appeals with the administrative courts, Second Circuit, and

> district court, with corresponding requests for stays of removal. Under the circumstances, petitioner has failed to satisfy Zadvydas's requirement that he "provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. There has been no showing that the government is unable to remove petitioner within a reasonable period of time after the pending proceedings are completed

Guang v. INS, 2005 WL 465436 at *2 (E.D.N.Y. 2005); See also, Reyes-Cardenas v. Gonzales, 2007 WL 1290141 at *8 (S.D.N.Y. 2007) ("[Petitioner's] detention does not violate Demore because his removal is stayed pending judicial review of respondents' administrative removal order. Since his detention is stayed, the ninety-day removal period under INA § 241, and the six-month presumptively reasonable removal period under Zadvydas, are tolled.").

Petitioner cites to Oyedeji v. Ashcroft, 332 F.Supp.2d 747 (M.D.Pa. 2004) in support of his argument that his continued detention is unconstitutional. Though not binding on this Court, Oyedeji acknowledged that aliens who have been ordered removed still possess a substantive Fifth Amendment liberty interest and are entitled an opportunity to be heard on the question of prolonged detention. Oyedeji, 332 F.Supp.2d at 752. Reiterating the Third Circuit's decision in Ngo v. INS, 192 F.3d 390, 397 (3d Cir. 1999), the Oyedeji court held that there is no due process impediment to the indefinite detention of an alien with a criminal

record under a final order of removal if: (1) there is possibility of his eventual departure; (2) there are adequate and reasonable provisions for grant of parole; and (3) detention is necessary to prevent risk of flight or threat to community. Id. at 752. With respect to continued detention as a result of securing a stay of removal, the court also held that an alien petitioner should "not be effectively punished for pursuing applicable legal remedies" Id. at 753.

Garcia's argument under Oyedeji fails for two reasons. First, Oyedeji stands for "the proposition that due process is not satisfied by 'rubberstamp denials' of a petitioner's periodic custody reviews by ICE." Abimola v. Ridge, 2005 WL 588769 at *3 n.6 (D.Conn. 2005). The record here indicates, however, that petitioner received regular custody reviews while in administrative custody, including one review that was conducted three months after petitioner's return to the Federal Detention Center in Batavia, New York. Second, the facts of Oyedeji are clearly distinguishable from petitioner's case. The district court in Oyedeji held that the alien's prior convictions, more than seven years earlier, of minor shoplifting offenses and his prior failure to appear in connection with criminal proceedings did not establish either risk of flight or danger to community. Id. at 754. Garcia, on the other hand, had been convicted of multiple weapons and controlled-substance offenses in a short period of time and has been deemed an

"aggravated felon" by DHS. Furthermore, he has demonstrated a propensity to abscond from custody when he absconded in April 2008, and was later apprehended by DHS Fugitive Operations. As a result, Garcia's reliance on Oyedeji is misplaced.

Finally, nothing asserted by Garcia supports his petition for release at this time. He will be released from custody once the stay of removal is lifted and DHS is able to act upon the order of removal. Garcia has not presented any facts to support a conclusion that there is no significant likelihood of his removal in the reasonably foreseeable future. Prior to the entry of the stay of removal by this Court, DHS procured a travel document from the Consulate General of the Dominican Republic to effectuate his removal, which was scheduled for December 8, 2004. The time elapsed between his return to DHS custody on September 14, 2004 and the date of his scheduled removal was less than three months, well under the requisite six months enumerated by Zadvydas. See Scott Decl. ¶ 17, 20, 23. Thus it cannot be said that removal is not "practically attainable" in petitioner's situation. Zadvydas, 533 U.S. at 690. Moreover, petitioner has a history of failure to comply with conditions of release as evidence by his violation of a previous order of supervision. Following his apprehension as a fugitive, DHS made an individualized custody determination on September 19, 2008 that Garcia is a flight risk. Thus, although Garcia's "detention has been lengthy, it is not indefinite: he will

ultimately be removed if his application for relief is denied or released if he prevails," Reyes-Cardenas, 2007 WL 1290141 at *7.

**CONCLUSION**

For the foregoing reasons, Garcia's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied.

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   October 1, 2009
         Rochester, New York